SHARON KAYE POURCHOT, Plaintiff-Appellant, v. COMMONWEALTH EDISON COMPANY, Defendant-Appellee.

Third District   No. 3—91—0392

Opinion filed January 31, 1992.

Law Offices of Naughton & Markese, of Joliet (Thomas P. Naughton, of counsel), for appellant.

Sedgwick, Detert, Moran & Arnold, of Chicago (Carol J. Gerner, of counsel), for appellee.

JUSTICE McCUSKEY delivered the opinion of the court:

Plaintiff, Sharon Kaye Pourchot, appeals from a judgment in the amount of $1,178.24 entered in her favor and against defendant, Commonwealth Edison Co. Plaintiff argues the trial court abused its discretion in denying her motion for sanctions following defense coun-

sel's *ex parte* communications with plaintiff's treating physician. Plaintiff also appeals the trial court's refusal to tender instructions to the jury on measuring damages for her future pain and suffering. We agree with both of plaintiff's contentions. We remand for a new trial and for the imposition of an appropriate sanction against defendant.

Plaintiff brought an action to recover damages for injuries allegedly sustained when she slipped and fell on a foreign substance on defendant's premises. Less than a week before the case was scheduled for trial, plaintiff filed a motion for continuance. Plaintiff represented that Dr. Nadine Schmitz, plaintiff's treating physician, had referred her to an orthopedic surgeon for surgery, and that plaintiff's condition had not reached a state of medical improvement necessary to evaluate the case for trial or settlement purposes.

Defense counsel stated that a day prior to receiving plaintiff's motion, defense counsel telephoned Dr. Schmitz's physician assistant to confirm Dr. Schmitz's availability as a defense witness at trial. Two days later, defense counsel again telephoned the physician assistant. Defense counsel advised the physician assistant that Dr. Schmitz may not need to appear at the scheduled trial because of Dr. Schmitz's referral of plaintiff for surgery, as set forth in plaintiff's pending motion for continuance. Defense counsel stated the physician assistant then volunteered that plaintiff had been referred not for surgery, but merely to accommodate plaintiff's desire for a physician closer to home. In response to defense counsel's inquiry, the physician assistant opined that Dr. Schmitz would sign an affidavit regarding the reason for the referral.

On the morning of the hearing on plaintiff's motion for continuance, defense counsel personally delivered an affidavit to Dr. Schmitz's office for her signature. Defense counsel met briefly with Dr. Schmitz to correct a typographical error on the affidavit. Defense counsel remained with Dr. Schmitz while she signed the affidavit. Dr. Schmitz then directed defense counsel to an office employee who would notarize the signature. The physician assistant also provided defense counsel with a written record of plaintiff's condition from a visit with Dr. Schmitz a week earlier.

At the courthouse that afternoon, defense counsel sought out plaintiff's counsel prior to the hearing and advised counsel of the contents of Dr. Schmitz's affidavit. In surprise, the plaintiff withdrew her motion for continuance.

Plaintiff promptly moved for sanctions against the defendant and its counsel based on defense counsel's *ex parte* communications with plaintiff's treating physician. Three *ex parte* communications were ul-

timately identified: defense counsel (1) solicited an affidavit from plaintiff's treating physician; (2) received a progress report prepared at plaintiff's last office visit; and (3) subpoenaed medical records from plaintiff's treating physician, without notice to plaintiff, six weeks prior to Dr. Schmitz's discovery deposition. Four days *after* the deposition, defense counsel disclosed possession of these records to plaintiff.

In response to plaintiff's motion for sanctions, defense counsel stated that at no time did she speak with Dr. Schmitz about the care and treatment of plaintiff. Defense counsel argued that she obtained the affidavit from Dr. Schmitz because she believed it was her obligation to disclose to the court the false allegation in plaintiff's motion for continuance.

The court found that an *ex parte* communication with plaintiff's treating physician occurred, but concluded that the contact was harmless, conducted in good faith, and neither "designed nor intended to *** intrude into the fiduciary relationship between doctor [and] patient." The court denied plaintiff's motion. Plaintiff then renewed her motion for continuance, on the ground that the *ex parte* communications disqualified Dr. Schmitz as a witness and that additional time was needed to obtain another medical expert. The court denied plaintiff's motion, and the case proceeded to trial.

At the close of evidence, the court refused to tender plaintiff's jury instruction which allowed for future pain and suffering. The jury rendered a verdict in favor of plaintiff, but awarded damages of $2,356.48 for her disability only. No damages were awarded for pain and suffering. In addition, the jury found plaintiff 50% responsible for her injuries. The trial court entered a judgment of $1,178.24 on the reduced verdict amount. Plaintiff's motion for a new trial was denied.

As her first issue on appeal, plaintiff contends that the trial court abused its discretion in denying her motion for sanctions. We agree.

■ *Ex parte* communications and conferences between defense counsel and a plaintiff's treating physician are prohibited as against public policy. (*Yates v. El-Deiry* (1987), 160 Ill. App. 3d 198, 202, 513 N.E.2d 519, 522; *Petrillo v. Syntex Laboratories, Inc.* (1986), 148 Ill. App. 3d 581, 499 N.E.2d 952.) A court's failure to bar a treating physician's testimony after *ex parte* communications constitutes reversible error. *Yates*, 160 Ill. App. 3d at 201, 513 N.E.2d at 521; *Requena v. Franciscan Sisters Health Care Corp.* (1991), 212 Ill. App. 3d 328, 331, 570 N.E.2d 1214, 1216.

This court in *Yates* rejected the argument a plaintiff must demonstrate that the *ex parte* communications resulted in improper conduct

or actual prejudice. Justice Heiple stated in *Yates* that "[p]rejudice and improper conduct can be implied from the fact that the plaintiff's treating physician has violated his ethical and fiduciary obligations owed to his patient by engaging in *ex parte* conferences concerning the patient with the patient's legal adversary and without the patient's consent." (*Yates*, 160 Ill. App. 3d at 203, 513 N.E.2d at 523.) Thus, the physician-patient privilege is violated at the time of an *ex parte* communication between the plaintiff's treating physician and defense counsel regardless of what information is actually revealed. (*Mondelli v. Checker Taxi Co.* (1990), 197 Ill. App. 3d 258, 265, 554 N.E.2d 266, 272.) Whether the contact was indeed harmless or conducted in good faith is *irrelevant* under our analysis.

We conclude that defense counsel's conduct violated the public policy favoring the sanctity and confidentiality of the doctor-patient relationship. (*Petrillo*, 148 Ill. App. 3d at 587-88, 499 N.E.2d 952, 957.) Accordingly, we reverse the trial court's order denying plaintiff's motion for sanctions. The determination of what sanction is appropriate is left to the sound discretion of the trial court. As guidance on remand, we note with approval the sanction of prohibiting examination by defendant's counsel of plaintiff's treating physician with whom defendant's counsel has improperly communicated. (*Nastasi v. United Mine Workers of America Union Hospital* (1991), 209 Ill. App. 3d 830, 840, 567 N.E.2d 1358, 1366.) Also, if the trial court believes the plaintiff's treating physician's testimony has been tainted by virtue of the improper *ex parte* communication, then the appropriate sanction is to bar that testimony. *Requena v. Franciscan Sisters Health Care Corp.* (1991), 212 Ill. App. 3d 328, 332, 570 N.E.2d 1214, 1216.

■ Plaintiff next contends the trial court abused its discretion in refusing to give a jury instruction on future pain and suffering. A jury instruction on future pain and suffering is warranted if the jury hears "some evidence" on that point from either an expert or lay person. *Onion v. Chicago & Illinois Midland Ry. Co.* (1989), 191 Ill. App. 3d 318, 320, 547 N.E.2d 721, 723; *Young v. Hummel* (1991), 216 Ill. App. 3d 303, 309, 576 N.E.2d 1072, 1075-76.

Dr. Schmitz testified that her diagnosis of impingement syndrome of the shoulder and de Quervain's tenosynovitis of the right wrist would account for plaintiff's complaints of pain and discomfort. While Dr. Schmitz declined to use the word "permanency" in conjunction with the condition of plaintiff's shoulder, she did describe it as having "reached a state of chronicity." Dr. Schmitz defined "chronicity" as meaning "chronic, ongoing." She further explained that a state of

chronicity in the shoulder meant "that it's there, that it may come and go, or that it may be there, but at varying levels of intensity."

Plaintiff testified that at the time of trial she was still experiencing pain in her shoulder and wrist, and numbness in her wrist. She testified that her range of motion continues to be limited, and she has difficulty lifting objects over 15 pounds without pain.

We conclude that plaintiff's own testimony and the testimony of her expert presented "some evidence" sufficient to warrant giving to the jury a future pain and suffering instruction. Therefore, the trial court abused its discretion in refusing to tender such an instruction to the jury.

The order of the circuit court denying plaintiff's motion for sanctions is reversed. We remand for a new trial and for the imposition of appropriate sanctions against defendant.

Reversed and remanded.

BARRY, P.J., and SLATER, J., concur.